Case number 24-5084. Andrew Dudt, Major, U.S. Army, at-balance, versus Daniel Driscoll, the Honorable Secretary of the Army. Mr. Thayer for the at-balance, Mr. Silverman for the appellee. Mr. Thayer, whenever you're ready. The start of a new term and we have new lighting in this courthouse so now we can see, so this is a great new beginning. Please, whenever you're ready. Thank you, Your Honor. Chief Judge, Your Honors, may it please the court, my name is Dylan Thayer. I am here on behalf of the appellant, Major Andrew Dudt. As this court has held in Frizzell v. Slater and reaffirmed in Jackson v. Mabus, military correction boards are required to address non-frivolous arguments put forth by applicants. Here, Major Dudt made three non-frivolous arguments which were not addressed by the correction board. First, that ASOC administrators arbitrarily administered room intrusion exercises. Second, that ASOC administrators failed to adhere to the student evaluation plan by not placing Major Dudt on academic probation and by failing to provide him with retraining prior to retesting. And third, that ASOC administrators violated Army Regulation 623-3 when preparing Major Dudt's Form DA-1059. Neither the June 2021 decision on Major Dudt's application nor the May 2019 decision by the correction board addressed any of these three non-frivolous arguments. When we look at the text of the 2019 and 2021 decision, almost the entirety of the correction board's analysis is devoted to boilerplate recitations of statutory and regulatory language. I think I have a sense of what you would like from us, but what is it that you would ultimately like from the corrections board? Yes, your honor. I think that what Major Dudt would like from the correction board is for them to fairly consider his argument that any adverse impact that he suffered during the course was as a direct result of these failures by the course administrators. What would that get him? That would get him a certification that he completed the course, your honor. So that is where I am a little unpersuaded. It seems like even if the board did everything perfectly well, even if his arguments are total winners in terms of things that went wrong before the correction board became involved, I don't see how a correction board can order him to receive a certificate for a course he didn't successfully complete. So a few points on that, your honor. So the correction boards have broad authority under 10 U.S.C. 1552 to correct any military record, any means any. So they can correct this course certification for a certainty, your honor. Second of all, I think it's important to contextualize the alleged failures that Major Dutt had on the course. There's been reference in the secretary's brief to 17 indices of failures by Major Dutt in the course. That comes over the course of four months and 500, 600 or so evaluations. I think there's no dispute in the record that the people who grade him failed him and gave him a failing grade. The people who assessed the course on the final day of the course did not pass, and your honor. I can see where he could go to the correction board and say, you know, all these procedural things went wrong. I wasn't given a fair shake and I should get to do it again. I should get another chance. But even if the board as a formal matter has the authority to grant any relief, it seems like it would be pretty wrong for the board's relief to be a diploma for a course he did not successfully complete. Sure. Well, I think that's for the board to determine, your honor. But if the board should not determine that, if it would be arbitrary or unreasonable for the board to do that, then you're here asking us to remand to a board that can ultimately not, that should ultimately not give you what you want. Well, I would dispute that it would be arbitrary for the board to do that, your honor. I think that the board went to college and I got a bunch of F's. I don't think he deserved the F's, by the way. He may have been a great student. It may have been a completely unfair shake that he got, but he did not receive passing grade from the course. If I went to college and I didn't get passing grade, I don't understand how my, how the remedy for a correction board would be I get the diploma anyway. So again, your honor, as I mentioned, I think it's worth contextualizing the alleged failures that he had. His contention, major debt's contention is, as I mentioned, these 17 failures, that's not the same as receiving 17 F's, your honor. That's out of 500 or 600 evaluations receiving 17 poor evaluations. So it's not receiving 17 F's, your honor. It's really more like receiving 17 A's if you split it out percentage wise. So I think that that major debt would push back. 17 A's and 483 A pluses. So 17 A's meaning like, I'm being a little, you know, I'm being a little glib, your honor. What I mean is if you look at the total percentage, I can't do the math off of the top of my head, but my, you know, best back of the envelope estimate is that 17 out of 500 or 600, that's something like a 95 to 97% pass rate. So when I said 17 A's, your honor, that's what I meant. Are they all equally ranked? How do we know that? Excuse me, your honor? Are they all equally ranked? So these- In college, for example, you have a five credit course, you have a one credit course. Sure. How do we know how they're ranked? I mean, the program that we get in the appendix is largely blacked out. You can't even tell what these various hoops that he has to go through, what they consist of. Yes, your honor. So as Judge Walker mentioned, this is at the end of the day, it's an up or down pass or fail course. So each of these matrices all play a part in how that assessment is made in terms of whether he's passing the course or not. So- I thought there was one indication that even if he failed one course, that was enough. Yes. So the secretary does mention in his brief how there is language in the student evaluation plan that says even one failure by a student is enough to merit removal from the course. I think that it's important not to take that overly literally, your honor. I think just as- How do you take it otherwise? Well, I mean, we all know in certain areas of life, there's something that a person could do in a job or any situation that would be so egregious that it would merit removal immediately. But the student evaluation plan also states that students who are having academic difficulties are required to be placed on academic probation. So I think that that language which says that the secretary can remove anyone for- or excuse me, that the ASOC course administrators can remove anyone for any failure, I think it's important not to read that too expansively. There are some failures that are so egregious that they, yes, they would merit immediate removal from the course. I want to follow up on two things that Judge Walker posed to you about maybe he'd be entitled to, if we rule in his favor, be entitled to take the course again. He already had that right. Isn't that correct? That is correct, your honor. He already had it and had it for 12 months after he failed the initial course and he didn't take advantage of it. That's correct, your honor. Yes, I think that Major Dutt feels that he was placed in a very disadvantageous position, that the course was arbitrarily and selectively administered. I think that that's been substantiated through the subsequent IG investigation that was performed and I think he felt that continuing to take the course again under such conditions would be futile. The other question I wanted to follow up on, excuse me, is the advisory opinion that came out in November of 2023, was it? I believe it was earlier than that, your honor. Of 2021? Yes, your honor. Yeah, okay. I think that that, I think that's correct. Your client received a letter sometime in the winter, I think it was January, saying that if you wanted to oppose this, which found the 17, if he wanted to oppose this, do so in 30 days, he didn't do it and the board went ahead and entered a judgment against him, relying on the advisory opinion. Why is it, how do you overcome that? Well, the, our office had requested an extension to the 30 days and the board. In April, the 30-day period had already run. It's my understanding that the 30 days, that was several years ago, it was prior, frankly, prior to my time at our firm, but it's my understanding that the time had not run prior to the request of the extension, your honor. I'd have to look, I'd have to look in the record to be certain about that. But the letter went out in January, am I wrong? I can't be certain about that, your honor, but it's my understanding that the, that that request was made in timely fashion. So, Mr. Thayer, my understanding from your briefing is that you are only, you are only questioning the reconsideration order, not the underlying order. So you're only challenging the 2021 reconsideration order. Well, that's correct, your honor, but I think it's important to assess these two orders in conjunction. And you're not challenging the 2019 order. Well, but the district court determined that the 2021 order was insufficient. And the district court said, yes, this order is insufficient, but if we rely on the 2019 order, then it's sufficient. So I think it's- That is a reconsideration order. Sure. We don't expect an army, you know, board of corrections to restate all of their reasons from an initial decision. Correct, your honor, but they didn't really state any reasons in the initial decision either. And so I think that that's, that's what I'm getting at is that- There were no reasons. I mean, your specific argument is that they failed to consider three arguments that you suggest were non-frivolous. So even if that is the case, you still have to show that failure to consider those things. So to even mention those things was prejudicial to Mr. Dutt. Sure. And I'm not sure, what is the, where have you shown that you can overcome the harmless error? Yeah, yes, your honor. I think that for the reasons I mentioned in, you know, speaking with Judge Walker, these errors were not harmless. These were non-frivolous arguments that Major Dutt made before the correction board. The correction board in 2019, the only analysis that they gave of this case, which wasn't boilerplate recitations of statutory language, was the record shows applicant was not meeting core standards in many areas. That doesn't respond to Major Dutt's arguments. And they're required to respond to those arguments because- What is the evidence, though, that if they were to respond to those arguments, there would have been a different outcome where he received a failing grade across a number of metrics? The board is required to correct any error or injustice in the record and- No, no, no. That's not what the statute says. The statute says if the secretary, as he considers necessary, it's a lot of discretion placed in the secretary and therefore in the board. There is, your honor, but courts have consistently found that failure to correct a clear injustice in the record is in of itself arbitrary and capricious. So the secretary has that discretion, but it can't be exercised in an arbitrary manner. And one of the ways that a board can exercise that discretion in an arbitrary manner is not reviewing non-frivolous arguments. And here, Major Dutt showed that he was not placed on academic probation when he was required to be placed on academic probation. He was not provided proper retraining prior to retesting. And he was arbitrarily given certain exercises. And all of these things had an impact on his course failures. I have one question about what you just said about probation. I understand your argument to be that there's an entitlement to probation. I wonder, what if the, I was going to say, what if the thing, I mean, just quick preface. I said this earlier, but I want to be clear. I'm not saying he deserved any of these bad grades. He may have done a great job. And it may be that he just, his evaluators were very misguided. That's not what's really before us right now. But what if the thing that his evaluators felt was insufficient happened on the last day of the course? It can't be that you have an entitlement to probation rather than, if the failing thing you did happened on the last day, it can't be that you have an entitlement to probation because the course would be over before your probation would even start. That's true, Your Honor. And that's an interesting hypothetical. But that's not what happened. Does it show that probation is not an entitlement? I wouldn't say so, Your Honor. How can it be an entitlement if you're not entitled to it? If the time for probation has lapsed, if it's the very last day of the course, and you do, and again, this goes to what I was talking about when Judge Randolph asked me the question about the ability of the course instructors to kick them out for anything. If you do something on the last day of the course that's so egregious that it does merit your removal from the course, then yes, the time for academic probation has lapsed and your removal from the course is merited in that scenario, Your Honor. You're correct. But in this scenario, the things for which he was given a poor evaluation did not happen on the final day of the course. They happened earlier. And in fact, he was given good evaluation. The two bad room invasions happened pretty late, right? They happened late, but he was initially... Given for when? How late? I don't remember exactly how late. They happened somewhat late, but certainly early enough that he could have been given retraining and retesting. And it's important to note also, he was initially given favorable evaluations for those, and then they were re-evaluated and he was given an unfavorable evaluation on the very last day of the course, Your Honor. Surely it is not the job of this court to revisit all of those determinations that were made in an intelligence course run by our military. No, of course not, Your Honor. I would never make that argument. That's sort of what it sounds like you're asking us to. Oh, no. Oh, no. Quite the contrary, Your Honor. All that Major Dodd is asking is that his arguments be fairly considered by the Correction Board. And based on this record, it's important to... I just have to say, I mean, this isn't a rulemaking where we sometimes remand for an agency to provide more reasons about a rule, right? That affects private rights going forward prospectively. I mean, this is essentially, a Board of Corrections is much more like an adjudication, right? An adjudication of whatever, some kind of, you know, he'd like to have his records corrected. And then if that's... It's a review of an application. Right, it's a review of an application. And if we determine that there's substantial evidence in the record to support that determination, why isn't that sufficient? I mean, what would be the reason to remand for the board to say a few more words about what they did? So this court has howled in Christ versus Secretary of the Air Force that the board must give a reason that this court can measure as to why it made its decision. A reason as to arguments that might affect the outcome. Right. Not as to all of the reasons. And so the board could fairly... Well, if the board finds that certain arguments are frivolous, the board is mandated to say that too. The board can't simply... That's where the standard in Christ, the board has to give a reason the court can measure commit. If the board finds that the arguments are frivolous, they have to indicate that and they have to indicate why so that this court can determine why the agency made the decision it made. Otherwise, there's nothing for this court to defer to. Do we have any further questions? Thank you. Thank you. Good morning, your honors. May it please the court, Bradley Silverman for the secretary. Dutt's argument on appeal is that the board failed to consider three points that he had raised to it. This argument fails for three reasons. First... Matt, can you speak up a little bit, please? Oh, I'm sorry. Is this better?  Dutt's argument fails for three reasons. First, the three points that he had raised to the board were not significant. They could not have changed the outcome. So the board was not, in fact, required to consider them at all under this court's case law. Second, and in any event, the board did consider each of his arguments when the opinions are read fairly and holistically. Third, and in any event, even assuming for argument's sake that the board did not consider these arguments, any error was harmless, essentially for the same reason that his three points were not significant in the first place. Let me start with the first point. This court has held in Roberts v. United States that it is not error when the board fails to consider an argument that is not significant. Likewise, in Frizzell, the case that my colleague on the other side was citing, this court determined that it was error for the board not to consider an argument that was not frivolous on its face and, and this is the language that is omitted from Dutt's brief, and could affect the board's ultimate disposition. And this follows from the State Farm Standard, which provides that an agency acts arbitrarily and capriciously when it entirely fails to consider an important aspect of the problem. If an argument is not significant, if it's not the sort of thing that could make a difference to the outcome, it's not an important part of the problem. Now, each of Dutt's arguments individually on their own terms could not, are not meritorious, but that's especially so when you consider not just the way he's saying that the board erred, but that in conjunction with the relief he's requesting, which is to essentially be retroactively deemed to have passed the course, qualified to perform highly sensitive human intelligence collection operations for the military. Is there an age limit? An age limit for the course? Yeah. I am not aware of one, and I am not aware of any reason to think that he would have reached that. What would his title have been had he passed the course? I'm not sure what the title would have been. Intelligence officer? I'm not sure what the title would have been. It would have been a certification that he could perform these operations. I don't know specifically what title would have accompanied that. I had a question similar to Judge Randolph's. What would the course have gotten him? What could he do after successfully completing the course that he couldn't do before? Well, he would have been eligible essentially to perform a certain type of sensitive human intelligence collection operation. I'm not exactly sure what that would entail. This is a highly classified area, and so the record does not go into great detail. I'm not withholding anything from you. The record just does not provide this. As you can see, it's extremely redacted. Would it have been a promotion?  I'm not sure if it's a promotion exactly or more like a certification. You can do this, which is not necessary. The reason I'm asking that question is twofold. If, in fact, the boards retroactively said he passed, would he be entitled to back pay? If it amounted to a promotion. I don't believe so, but I'll be very honest. I cannot say that with certainty. I don't think that's the case, but I would be lying if I said I knew that for a fact. But we don't want you to lie. I'll do my best not to. So let's look at each of the arguments that he makes. First, he says that the course instructors selectively administered room incursion exercises. But the record makes clear why he was given additional room incursion exercises. He had previously messed up a different assignment, and these additional exercises were a way to provide him an additional opportunity to succeed. So far from holding him to a higher standard, this was giving him an extra chance to not perform poorly. To the extent that there was any inconsistent treatment, it was to his benefit. Second, he argues that the course instructors were required to put him on academic probation. And that is just not what the relevant language says. He focuses on the language that a student who performs poorly, quote, is subject to academic probation. And he construes the phrase subject to, to mean they must put him on academic probation. But that's just not what that means. To offer an example, if your employer says employees are subject to random drug testing, what that means is they might drug test you, not that they definitely will drug test you. Here, too, to say that you're subject to academic probation. That same subsection, though, says students will be given mandatory remedial training. That seems more like a guarantee than the subject to probation language. It does say that. But there are a couple of points on that. First, he was, in fact, given some retraining. But you all disagree about that. Well, actually, I don't think so. Because in his own brief, he acknowledges that the course, the room incursion exercises, at least that he had been told, that they were provided to make up for his previous shortcomings in other areas. Let's say I'm persuaded by him that he was not given remedial training. I think you can still win. So tell me how you can still win. Okay. So he was not given, let's say he was not given remedial training. Even so, the most that that argument could establish for him is that he would be entitled to take the course again. If that's the relief he's asking for, you know, it'd be a different story. But he's not asking for that. And in fact, there's no dispute that he can take the course again. He was allowed to, he chose not to. What he's instead asking for is, you know, don't just let me do it again. Instead, just say I passed. Even accepting his arguments that he was not given training, nothing about that means that he actually passed the course. And I think it would be quite unreasonable for the board to say, you didn't pass, you should have been given the training so that you learned the skills to allow you to pass. And it was wrong that you weren't given that retraining. Yeah. So what we're going to do is, we're going to say that you did pass and have the skills necessary to do these very sensitive intelligence operations. And then next thing, you know this guy's going to be, you know, behind enemy lines, undercover as an intelligence operative without the skills to survive and without the skills to protect his fellow agents. That seems like a very, very unreasonable thing to ask the corrections board to do. Well, I agree completely. Yes. I think it's important to remember this is not, you know, just an academic exercise here. If he were to get the relief he seeks, that is what would happen. There are real stakes on the line. I think none of that, you might not like this as well, is what I just said. None of that changes that, you know, you look at this record and there's at least a decent chance that what happened is he noticed some things in this course that were bad practices, including not protecting sensitive information. He blew the whistle. The people he blew the whistle against got mad at him and they punished him by not giving him the training or the fair shake that he was entitled to. And I think there's a decent chance that that happened. But I think it doesn't mean that he gets a diploma that he didn't earn. I agree with you on the second part. I think it's speculative to say that this, you know, that he was retaliated against. That is certainly what he says. The evidence for that just isn't there. Are there whistleblower protections for members of the military? He doesn't bring a whistleblower claim. He doesn't bring a whistleblower claim, no. If there are no further questions. Thank you. Thank you, your honors. I have a few points to make in response to some of the things that my friend across the aisle just said. First of all, he mentioned that none of Dutt's arguments could have changed the outcome. I think it's important to contextualize again the obligation that this court and that other courts have found that military corrections board, correction board has to thoroughly review the record, correct any injustice and explain why an argument is frivolous or non-frivolous. So I think that if the board had found that an injustice had occurred, they have an obligation to fashion remedy. They didn't explain why in response to Major Dutt's arguments, they were not going to fashion a remedy in his favor. There was also some mention about providing a benefit to Major Dutt by giving him room intrusion exercises that weren't given to other students. Those are the room intrusion exercises that he failed. So I think that Major Dutt's contention is how can it be said to be a benefit to me if I'm being given exercises and then I'm failing them and that's the reason I'm failing out of the course. I think in conclusion, I'd like to direct this court to two pertinent sources of information. First, in Jackson v. Mabus, Justice Kavanaugh writing for this court stated very forcefully in response to an application put forward by a plaintiff applicant who it must be noted did not even contend that the correction board hadn't thoroughly reviewed his arguments. Justice Kavanaugh said, this court has previously cautioned the boards for correction of military records that they must sufficiently explain their reasoning in order to have their decisions sustained. Despite our admonitions, the board's explanation for denying Jackson's request was thinner than it should have been unlike the board's detailed explanation for denying Jackson's initial application for correction. We again urge the relevant boards to take care to sufficiently address each non-frivolous claim raised by an applicant for record correction. What's their caseload, do you know? Excuse me? What is their caseload, do you know? The boards, they have thousands of cases every year. And how many members? So there are different panels within the board itself. Each panel consists of three members. With thousands of cases. But there are multiple panels as there are multiple panels of this court, Your Honor. On page 33 of his brief, the secretary concedes that the board's overall conclusion, quote, didn't, or excuse me, was not expounding upon each of Dutt's discreet arguments. Mr. Thayer, you're out of time, so if you could just wrap it up. Yes, thank you, Your Honor. That's all I have to say. Thank you. Case is submitted.
judges: Rao; Walker; Randolph